In re GENARO RODRÍGUEZ GERENA, querellado.

*Número:* CP-2009-0009      *Resuelto:* 15 de marzo de 2016

918

*Zaira Z. Girón Anadón*, subprocuradora general, y *Minnie H. Rodríguez López*, procuradora general auxiliar; *Genaro Rodríguez Gerena, pro se.*

PER CURIAM:

I

El Lcdo. Genaro Rodríguez Gerena fue admitido al ejercicio de la abogacía el 29 de diciembre de 1976 y al de la notaría el 20 de enero de 1977.([1])

---

([1]) Es menester señalar que el licenciado Rodríguez Gerena ha sido objeto de sanciones disciplinarias en el pasado. Véase *In re Rodríguez Gerena I*, 132 DPR 693 (1993) (en esa ocasión se le suspendió indefinidamente del ejercicio de la abogacía

El 25 de mayo de 2004, la Sra. Alexandra García Ramírez (quejosa) presentó una queja contra el licenciado Rodríguez Gerena y el Lcdo. Benito Gutiérrez Díaz, quien posteriormente falleció. En ésta señaló que, luego de comprarle una casa a su padre de crianza —el licenciado Gutiérrez Díaz—,([2]) a instancias de éste, ella se personó a la oficina del licenciado Rodríguez Gerena seis días después para suscribir un documento que presuntamente protegería la vivienda en caso de que a su esposo, quien se desempeñaba como policía, le sucediera algo. Así, alegó que al pasar por la oficina del letrado, éste no permitió que leyera el referido documento y se negó a expedirle una copia del mismo. Posteriormente, según surge de la queja, el licenciado Gutiérrez Díaz requirió que la madre de la quejosa desalojara la casa que le había comprado a aquél y afirmo que dicha propiedad era suya.([3])

Así las cosas, la señora García Ramírez acudió nuevamente al despacho del licenciado Rodríguez Gerena para poder leer el documento que había suscrito luego de haber comprado la casa en cuestión. Al leer el documento, se percató que en éste le estaba vendiendo la vivienda al licenciado Gutiérrez Díaz. Por lo tanto, la señora García Ramírez indicó en su queja que firmó tal documento bajo engaño y sin que el licenciado Gutiérrez Díaz estuviese presente.

En lo pertinente, el licenciado Rodríguez Gerena negó las alegaciones de la quejosa. En cambio, señaló que ésta,

---

por violaciones a los Artículos 15(e) y 26 de la Ley Notarial de Puerto Rico, 4 LPRA secs. 2033(e) y 2044, y al Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX. Posteriormente, sin embargo, en *In re Rodríguez Gerena II*, 132 DPR 1031 (1993), en reconsideración, este Tribunal limitó la sanción a la separación permanente del ejercicio de la notaría). Una vez el licenciado Rodríguez Gerena fue reinstalado al ejercicio de la notaría véase *In re Rodríguez Gerena*, 138 DPR 138 (1995) este Tribunal lo suspendió nuevamente de la notaría mediante Resolución de 28 de octubre de 2015 por haber incumplido con varios requerimientos que la Oficina de Inspección de Notarías le cursó. Además, actualmente penden contra él las quejas siguientes: AB-2007-324, AB-2011-255, AB-2013-147 y AB-2014-133.

([2]) Esta escritura de compraventa fue autorizada por la Lcda. Jacqueline J. Martínez Romero.

([3]) Valga destacar que, cuando ocurrieron estos hechos, la madre de la quejosa estaba tramitando su divorcio del licenciado Gutiérrez Díaz.

en efecto, pudo leer el documento que suscribió y que, cuando le pidió copia del mismo, él accedió a dársela. Asimismo, señaló que el licenciado Gutiérrez Díaz estuvo presente y que incluso le entrego cierta cantidad de dinero a la señora García Ramírez.

En lo que respecta al licenciado Gutiérrez Díaz —contra quien también se presentó la queja—, éste alegó en su contestación esencialmente, la validez y licitud del negocio jurídico celebrado con la señora García Ramírez. Además, señaló que ésta nunca ocupó la casa como dueña, puesto que nunca hubo tradición. Asimismo, el licenciado Gutiérrez Díaz afirmó que el negocio jurídico en cuestión se realizó para lograr refinanciar hipotecariamente una propiedad suya a través de un tercero. Según surge de su contestación, luego de que se lograra el refinanciamiento, la quejosa y su esposo habrían de traspasarle la propiedad nuevamente a través de un contrato de compraventa y éste asumiría el pago de la deuda hipotecaria.

En consideración de lo anterior, este Tribunal inicialmente refirió el asunto a la Oficina de Inspección de Notarías (ODIN) para que ésta evaluara el asunto y emitiera un informe sobre el particular. El 28 de junio de 2005, la ODIN presentó el informe correspondiente, en el cual determinó que las partes, en cierta medida, estuvieron involucradas en la simulación de un negocio jurídico.[4] Es imperativo señalar que el licenciado Rodríguez Gerena admitió, en su contestación a la queja, que estaba interviniendo en la simulación de un negocio jurídico. Indicó, pues, que la quejosa había acudido ante él con el propósito de venderle lo más rápido posible el inmueble al licenciado Gutiérrez Díaz, de quien lo había adquirido para que él mismo obtuviera un refinanciamiento de la propiedad. Es decir, el licenciado Rodríguez Gerena tenía conocimiento

---

[4] Es preciso notar que la determinación de la Oficina de Inspección de Notarías (ODIN) estuvo fundamentada en una serie de documentos sometidos por las partes, entre éstos, las propias admisiones hechas por el licenciado Rodríguez Gerena en su contestación a la queja.

de que la compraventa que autorizó era, en realidad, un negocio jurídico simulado, conforme al acuerdo de refinanciamiento pactado entre el licenciado Gutiérrez Díaz y la señora García Ramírez.

Posteriormente, el asunto fue referido a la Oficina de la Procuradora General, quien procedió a presentar la querella correspondiente, imputándole al licenciado Rodríguez Gerena infracciones al Artículo 2 de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, 4 LPRA sec. 2002, y al Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX. Acaecidos los trámites de rigor, el 15 de enero de 2013 la Comisionada Especial, Lcda. Jeannette Ramos Buonomo, rindió su informe, en el cual determinó que, en efecto, el licenciado Rodríguez Gerena vulneró las normas éticas imputadas.

## II

### A

En su Artículo 2, la Ley Notarial de Puerto Rico consagra la fe pública notarial como principio cardinal del ejercicio de la notaría. Así, dispone que

[e]l notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. (Corchetes en el original). 4 LPRA sec. 2002.

Como se sabe, "[l]a fe pública notarial [...] es la espina dorsal de todo el esquema de autenticidad documental.

Cuando se quiebra, todo el sistema se afecta". *In re González González*, 119 DPR 496, 499 (1987).

■ Los notarios, pues, ejercen una labor fundamental para nuestro ordenamiento jurídico, puesto que son los custodios de la fe pública, a través de la cual se hacen viables un sinnúmero de negocios jurídicos y de transacciones de diversa índole. Véase *In re Aponte Berdecía*, 161 DPR 94, 103 (2004). Por lo tanto, en el ejercicio de sus prerrogativas, los notarios están indefectiblemente "obligado[s] a cumplir con la ley y el reglamento notariales y los cánones de ética profesional". *In re Ayala Oquendo*, 185 DPR 572, 580 (2012). Véase, además, *P.A.C. v. E.L.A. I*, 150 DPR 359, 393 (2000).

■ En lo pertinente, un abogado viola la fe pública notarial cuando da fe de hechos falsos. *In re Aponte Berdecía*, supra, pág. 103. Ello atenta contra las consideraciones axiológicas que informan en el ejercicio de la notaría en nuestra jurisdicción y, a su vez, supone conducta éticamente reprochable, sancionable bajo los cánones de ética profesional.

## B

■ El Canon 35 del Código de Ética Profesional le "impone a los abogados [y a los notarios] un deber de sinceridad y honradez frente a todos, no sólo en la tramitación de litigios, sino en *todo tipo de acto*". (Énfasis suplido). *In re Pons Fontana*, 182 DPR 300, 306 (2011). Véase *In re Collazo Sánchez*, 159 DPR 769, 773 (2003). Este deber se exige "en aras de preservar el honor y la dignidad de la profesión, ya que el compromiso del abogado con la verdad es *incondicional e ineludible*". (Énfasis en el original). *In re Martínez Almodóvar*, 180 DPR 805, 818–819 (2011). Véase *In re Irizarry Vega*, 176 DPR 241, 245 (2009).

Ciñéndonos a los hechos del asunto ante nuestra consideración, es preciso destacar que el referido canon dispone

diáfanamente que "[e]l abogado debe ajustarse a la since-
ridad de los hechos al [...] redactar afidávit u otros docu-
mentos [...]". 4 LPRA Ap. IX, C. 35. "En armonía con lo
anterior, con su firma, un abogado no puede suscribir he-
chos incompatibles con la verdad". *In re Martínez, Odell I*,
148 DPR 49, 54 (1999). Véase *Alonso García v. Comisión
Industrial*, 102 DPR 752, 755 (1974).

## C

■ Por último, es preciso destacar que la simulación
de negocios jurídicos por parte de un notario, en cierta me-
dida, supone conducta éticamente reprochable que, como
mínimo, vulnera tanto el Artículo 2 de la Ley Notarial de
Puerto Rico como el Canon 35 del Código de Ética
Profesional. Es decir, mediante la simulación, sea esta ab-
soluta o relativa,(5) el notario no sólo le falta a la verdad,
sino que, además, mancilla la fe pública notarial deposi-
tada en él. Este Tribunal ha sido enfático al sancionar éti-
camente esta práctica. Así, hemos expresado que

> [l]a participación de un abogado [en un negocio simulado],
> cobra mayor vigencia y validez cuando éste se desempeña
> como notario ya que en tal situación se está atentando contra
> la propia naturaleza de lo que la fe notarial y pública repre-
> senta en una sociedad que ha depositado confianza en manos
> de dicho funcionario.
> Resolvemos que la validez de los actos y documentos públi-
> cos no puede dejarse al arbitrio de una norma ética débil, y
> que la participación de un abogado como tal o como notario en
> negocios simulados es conflictiva con los mejores postulados de
> conducta que deben regir a los miembros de nuestra profesión
> de abogado y en su consecuencia ello de ordinario constituye
> suficiente base para el desaforo. *In re Vélez*, 103 DPR 590,
> 598–599 (1975).

Por lo tanto, no hay duda que la intervención de un

---

(5) Para una discusión jurídica sobre la simulación de negocios jurídicos, véanse,
por ejemplo: *Delgado Rodríguez v. Rivera Siverio*, 173 DPR 150, 160–164 (2008);
*Romero v. S.L.G. Reyes*, 164 DPR 721 (2005).

abogado o notario en cualquier negocio jurídico simulado es razón suficiente para sancionarlo disciplinariamente.

## III

En este caso, es innegable que el licenciado Rodríguez Gerena incurrió en una conducta éticamente reprochable, la cual contravino tanto el Artículo 2 de la Ley Notarial de Puerto Rico como el Canon 35 del Código de Ética Profesional.

Ante todo, tal y como surge de su contestación a la querella, el licenciado Rodríguez Gerena autorizó una presunta "compraventa" de un inmueble a sabiendas de que ésta no era más que un subterfugio para que una de las partes procurara un financiamiento a través de un tercero. Al actuar de esta forma, vulneró la fe pública notarial depositada en él y, a la vez, contravino el deber de sinceridad que establece el Canon 35 del Código de Ética Profesional.

En vista de lo anterior, *se suspende por el término de treinta días al licenciado Rodríguez Gerena del ejercicio de la abogacía. Se le impone el deber de notificar a todos sus clientes de su inhabilidad para seguir representándolos, devolverles cualquier honorario recibido por trabajos no realizados e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del País. Además, deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de treinta días a partir de la notificación de esta opinión "per curiam" y sentencia.*

*Se dictará sentencia de conformidad.*

La Jueza Presidenta Oronoz Rodríguez se inhibió. La Jueza Asociada Señora Pabón Charneco no intervino.